| | |
|---|---|
| WILLETTE L. BOWSER<br>4634 Belle Plain Drive<br>Charlotte, NC 28215<br><br>          Plaintiff<br><br>vs.<br><br>UNITED STATES POSTAL SERVICE and<br>LOUIS DEJOY, in his official capacity as<br>POSTMASTER GENERAL<br>475 L'Enfant Plaza SW, Room 4012<br>Washington, DC 20260<br><br>          Defendants. | **COMPLAINT**<br><br>Civil Action No.:<br><br>*Jury Trial Requested* |

Plaintiff Willette L. Bowser ("Ms. Bowser"), by and through her attorneys at The Fuller Law Firm, P.C., as and for her Complaint against Defendants, hereby states and alleges the following upon information and belief:

### NATURE OF ACTION

1. This is an action for damages arising from Defendants' discrimination and harassment on the basis of age, and disability and retaliation against Ms. Bowser, all culminating in a hostile work environment in violation of the: Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*; Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*; Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*; Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq.*

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter and the persons in this action under 28 U.S.C. §§ 1331 and 1361, and venue is proper in this district because a substantial part

of the acts and omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(c)(2) and (e)(1).

## PARTIES

3. Ms. Bowser is a 55-year-old, African American female, permanently disabled, current employee of Defendants who resides in Mecklenburg County, North Carolina.

4. Defendant United States Postal Service is a federal agency, operating, and doing business in and under the laws of the United States, and is Ms. Bowser's employer.

5. Defendant Louis DeJoy is the Postmaster General of the United States and the Chief Executive Officer of the United States Postal Service, who is being sued in his official capacity, and who is Ms. Bowser's employer.

## FACTUAL BACKGROUND

6. Ms. Bowser is employed by Defendants as a Passport Acceptance Clerk 01/0, Level 6, stationed at the Charlotte Northeast Station, 1820 Harris Houston Road, Charlotte, North Carolina 28262.

7. Ms. Bowser's permanent disabilities include: sesamoiditis; vascular necrosis of the sesamoid bone; Morton's Neuroma; and bunions on her right foot. These disabilities substantially limit her major her life activities.

8. In addition, these medical disabilities limit Ms. Bowser's ability to perform various duties, including lifting no more than a maximum of 10 lbs. continuously and 20 lbs. intermittently, engaging in no more than two hours of daily walking, pushing, reaching, pulling, twisting, lifting, pending, squatting, stooping, kneeling, and climbing, operating a motor vehicle at work, and being restricted to an 8-hour work day and 40-hour work week.

9. Due to these conditions, Ms. Bowser cannot perform certain work duties, including but not limited to window attendant duties, distribution duties, carrier duties, dispatch of mail, or any duties under a sales, service, or distribution associate description.

10. In addition to the above limitations, Ms. Bowser has retrofitted her entire home with ergonomic items to aid her disabilities, and she is required to wear foot orthotics every day.

11. Further, Ms. Bowser was the primary caregiver for her elderly mother before her recent death, and is now the caregiver for her disabled brother. Ms. Bowser and her brother are (and her now deceased mother was) immuno-compromised, giving them a significantly higher chance of death or serious injury in the event they ever contract COVID-19.

12. During her employment with Defendants, Ms. Bowser consistently has advocated for a fair workplace. Ms. Bowser previously pursued allegations of discrimination and unfair conduct by filing formal EEO complaints against Defendants in #4B-140-0062-06 and #4K-280-0062-18. Defendants, including Ms. Bowser's supervisors, were aware of these prior formal complaints against Defendants, and this appears to have made Ms. Bowser a target.

***Defendants Deny Ms. Bowser's Job Bid Due to Her Age.***

13. Ms. Bowser was stationed at Mint Hill, North Carolina, in March 2016 when, without any prior warning, the Mint Hill branch closed and all employees had to be relocated.

14. At that time, Ms. Bowser's intent was to continue with the passport department, and she hoped to be relocated to the newly-created Charlotte Passport Center. Ms. Bowser submitted a bid for a new position in the new passport center. Her bid included an accommodation request for a temporary change in schedule to account for her disabilities and care for her family members.

15. Initially, Defendants informed Ms. Bowser that she had secured the job she bid for in the Charlotte Passport Office.

16. But when Ms. Bowser followed up on her accommodation request, Defendants reversed course and denied her bid because of her disabilities.

17. Even more, Defendants specifically withdrew the job bid because the position's responsibilities included window duties, and Defendants refused to accommodate Ms. Bowser's disabilities.

18. Immediately thereafter, the job was awarded to a younger employee with much less seniority than Ms. Bowser.

19. Ensuing thereafter, Ms. Bowser filed a formal grievance.

20. Because Ms. Bowser was denied the new job and was denied accommodation for her disabilities, she had to accept an alternate position. This new position was problematic because it exacerbated the effects of Ms. Bowser's disabilities, especially when the COVID-19 pandemic escalated. This new position caused Ms. Bowser to be the first person assigned to report to short-staffed branches. Making things worse, upon reporting to the new branches, Ms. Bowser was forced to endure physical demands she would not normally have done, and she did not receive the appropriate accommodations.

**<u>Defendants Deliberately Altered Ms. Bowser's Time Records</u>.**

21. In early 2021, Ms. Bowser requested her normal 40-hour week be reduced to a 35-hour week in order to accommodate the care she provided for her family, especially in light of the COVID-19 pandemic and because of her own disabilities.

22. Defendants approved Ms. Bowser's reduced schedule request.

23. However, shortly after her reduced schedule took effect, Ms. Bowser noticed that her accrued Sick or Annual Leave time was being expended. Ms. Bowser discovered that Defendants were attributing her earned Sick or Annual Leave time to the reduced schedule. In effect, Defendants were making Ms. Bowser pay for the accommodation they had approved.

24. In total, Defendants wrongfully attributed over 80 hours of Ms. Bowser's accrued Sick or Annual Leave to her reduced schedule, instead of actually reducing Ms. Bowser's work hours, in accordance with her accommodation request.

25. Ms. Bowser reported and complained about this discrepancy to Defendants to no avail.

### *Retaliatory and Harassing December 2021 Absent-Without-Leave ("AWOL") Charge*.

26. On or about December 29, 2021, a coworker informed Ms. Bowser that she (the co-worker) and her husband had tested positive for COVID-19. The coworker suggested Ms. Bowser seek immediate testing because of their workplace proximity and because the coworker knew about Ms. Bowser's vulnerable family members at home.

27. The next day, Ms. Bowser approached her supervisors and inquired why there had not been a branch-wide notification about the co-worker's positive COVID-19 diagnosis. Ms. Bowser's supervisor responded that there would not be a branch-wide notification and that Defendants would not be providing tests for any of the branch's employees.

28. Ms. Bowser believed this was a violation of Defendants' COVID-19 policies and that she was being treated unfairly, in that Defendants were placing she and her family members in danger of contracting COVID-19.

29. Since Defendants refused to provide Ms. Bowser with any COVID-19 testing, she had to take it upon herself to get herself and her family members tested.

30. On or about December 30, 2021, Ms. Bowser submitted a PS Form 3971 (Request for or Notification of Absence), requesting an eight-hour leave on December 31, 2021, so she could take her family for COVID-19 testing.

31. Defendants denied Ms. Bowser's request.

32. Due to the severity of the COVID-19 pandemic and the lack of testing kits available, Ms. Bowser could not schedule her testing appointments until January 2, 2022.

33. Ms. Bowser and her family remained in isolation until their test results returned negative on January 5, 2022.

34. To add insult to injury, having unlawfully denied Ms. Bowser's leave request and because she had to get tested, Defendants unlawfully charged Ms. Bowser with being AWOL (absent without leave). This was an adverse employment action.

### *Retaliatory and Harassing January 2022 Absent-Without-Leave ("AWOL") Charge*.

35. On or about January 19, 2022, another coworker alerted Ms. Bowser that she also had tested positive for COVID-19.

36. Defendants again failed to inform the branch employees of the positive COVID-19 test, and again refused to provide their employees with any COVID-19 testing resources.

37. On or about January 20, 2022, Ms. Bowser again submitted a PS Form 3971 (Request for or Notification of Absence), requesting three and a half hours leave for COVID-19 testing.

38. Defendants again denied Ms. Bowser's request, simply stating, "services needed."

39. Nevertheless, Ms. Bowser and her family went to their scheduled COVID-19 test and remained in isolation until their test results returned negative.

### *Retaliatory, Harassing, and Unnecessary Absence Inquiry Letters*.

40. On several occasions, Defendants sent Ms. Bowser harassing Absence Inquiry Letters. These letters are sent when an employee is absent from work for a reason unknown to the supervisor. Absence Inquiry Letters are a form of discipline.

41. Defendants issued the first harassing letter on or about March 28, 2022, when Defendants accused Ms. Bowser of missing multiple days of work without prior notification.

42. Ms. Bowser was outraged by this letter because it was false – actually, she was present at her branch and was working.

43. Defendants never explained why this first Absence Inquiry Letter was issued.

44. Defendants issued another Absence Inquiry Letter on or about July 5, 2022, that alleged Ms. Bowser had failed to report to work.

45. In reality, Ms. Bowser had requested emergency leave, through a PS Form 3971 (Request for or Notification of Absence), with supporting medical records, to take her brother to the emergency room. In addition to submitting her PS Form 3971 (Request for or Notification of Absence) beforehand, Ms. Bowser had texted her supervisor and called in to Defendants' computerized system to request the emergency leave.

46. Despite Ms. Bowser's persistence and strict adherence to Defendants' policies, Defendants still issued an Absence Inquiry Letter, and then refused to grant Ms. Bowser's July 5, 2022, emergency leave request.

47. On or about October 1, 2022, Defendants issued yet another Absence Inquiry Letter with respect to a day for which Ms. Bowser already had been approved for leave. Specifically, Ms. Bowser previously had submitted a PS Form 3971 (Request for or Notification of Absence) for an eight-hour day which was approved by Defendants.

48. Defendants had no reason or basis upon which to issue this third Absence Inquiry Letter for a day she was already approved to miss.

*__April 4, 2022, Harassment by Postmaster General__.*

49. On or about April 4, 2022, Ms. Bowser was working in the passport office with one other employee. At that time, the passport office was only accepting scheduled appointments with customers because of the COVID-19 pandemic. This was a particularly busy day in the passport office because the office was understaffed.

50. After the lunch break, Ms. Bowser unlocked the front door and was approached by an unknown man. The man and his family were there to have their passport applications processed. But the family did not have an appointment.

51. Ms. Bowser informed them that it was an exceptionally busy day, and they would have to make an appointment and return another day. Ms. Bowser explained there were already a lot of people ahead of them and it would not be fair to allow the family to cut in front of everyone who had been waiting.

52. In response, the man told Ms. Bowser that he was a friend of the local Postmaster and handed Ms. Bowser his cell phone.

53. Ms. Bowser answered the phone, and her local Postmaster was on the phone. The Postmaster aggressively commanded Ms. Bowser to bring the man's family to the front of the line and process their applications immediately.

54. Ms. Bowser politely declined, noting the office's policy on appointments and how it would be unfair to the others who already waited a very long time.

55. The Postmaster remonstrated Ms. Bowser and ignored her comments. He then called another employee whom he forced to process the man's family's passport application over Ms. Bowser's objections.

56. Ms. Bowser was harassed and disrespected by the Postmaster's abusive and intimidating comments and actions, and she was pressured by the Postmaster to violate the Post Office's rules and regulations, which have the effect of public policies.

### *May 2, 2022, Retaliatory, Harassing Inquiry on Previously Approved Leave.*

57. On or about April 15, 2022, Ms. Bowser submitted a PS Form 3971 (Request for or Notification of Absence) for approximately four hours of leave to be taken on May 2, 2022, in order to transport her brother to a necessary medical appointment. Ms. Bowser scheduled the appointment for the middle of the day so she could begin her shift, take her brother to his medical appointment, and then return to complete her shift.

58. Defendants approved Ms. Bowser's request.

59. On the day of the appointment, Ms. Bowser submitted another PS Form 3971 (Request for or Notification of Absence) for an additional hour of leave needed to cover her brother's appointment. Defendants neither approved nor denied this supplemental request.

60. On May 2, 2022, Ms. Bowser reported for the beginning of her shift. She worked a few hours and then clocked out to take her brother to his medical appointment.

61. When Ms. Bowser arrived at the medical appointment, she saw that she had received multiple text messages from her supervisor inquiring about why Ms. Bowser left her shift without authorization.

62. Ms. Bowser was intimidated and singled out by these text messages because her supervisor was making her seem as if she did something wrong.

63. In fact, Ms. Bowser's electronic timecard reflects that she arrived for the beginning of her shift on May 2, then clocked out for the five hours of her brother's medical appointment, and then returned to finish her shift – just as she had previously requested leave to do.

64. Weary and dispirited by all of Defendants' discriminatory conduct against her, on or about July 12, 2022, Ms. Bowser timely and duly submitted her EEO Complaint of Discrimination against Defendants (4B-270-0177-22).

65. On April 24, 2023, a final agency decision was issued.

66. Ms. Bowser now has exhausted all administrative processes available prior to filing this action.

## FIRST CAUSE OF ACTION

*Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq.*

67. Ms. Bowser repeats and re-alleges paragraphs 1-66 of this Complaint, as if fully set forth herein.

68. Ms. Bowser is 55 years old, born on April 19, 1967. Her age is commonly known by Defendants and is recorded in her personnel file.

69. Defendants subjected Ms. Bowser to discrimination because of her age by *inter alia*: (a) refusing to award Ms. Bowser's job bid with an accommodation and awarding that same position to a person under 40 years old; and (b) by treating Ms. Bowser differently on account of her age and forcing her to report to understaffed branches as a senior employee when other junior employees were available to do so.

70. Defendants have caused Ms. Bowser to suffer significant mental, emotional, and psychological distress.

71. Defendants' unlawful conduct was willful, wanton, intentional, and in total disregard of Ms. Bowser's rights, such that Defendants are liable for punitive damages in an amount to be determined at trial.

72. Consequently, Defendants have violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*, and are liable to Ms. Bowser for damages and relief in accordance with the Prayer for Relief below.

## SECOND CAUSE OF ACTION

*Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.*

73. Ms. Bowser repeats and re-alleges paragraphs 1-72 of this Complaint, as if fully set forth herein.

74. Ms. Bowser's permanent medical conditions qualify as disabilities under the Americans with Disabilities Act and substantially limit her major life activities.

75. Defendants subjected Ms. Bowser to discrimination because of her disabilities by, *inter alia*: (a) refusing to award Ms. Bowser's job bid with an accommodation and awarding that same position to a person under 40 years old; (b) improperly denying and ignoring Ms. Bowser's requests for leave for her and her family to receive COVID-19 testing because of their health status and by subjecting Ms. Bowser to the possibility of contracting the COVID-19 virus; and (c) unlawfully altering Ms. Bowser's time records with respect to her approved accommodation requests.

76. Defendants have caused Ms. Bowser to suffer significant mental, emotional, and psychological distress.

77. Defendants' unlawful conduct was willful, wanton, intentional, and in total disregard of Ms. Bowser's rights, such that Defendants are liable for punitive damages in an amount to be determined at trial.

78. Consequently, Defendants have violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and are liable to Ms. Bowser for damages and relief in accordance with the Prayer for Relief below.

## THIRD CAUSE OF ACTION

*Violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq.*

79. Ms. Bowser repeats and re-alleges paragraphs 1-78 of this Complaint, as if fully set forth herein.

80. Ms. Bowser qualifies for the Family and Medical Leave Act because she was (and is) the primary caregiver for her mother (before her death) and brother, both of whom had (and have) serious health conditions.

81. Defendants subjected Ms. Bowser to discrimination, harassment, and a hostile working environment by, *inter alia*: (a) improperly denying and/or ignoring Ms. Bowser's requests for leave to care for herself and her family in order to receive COVID-19 testing because of their health status; (b) altering Ms. Bowser's time records with respect to her approved leave requests; and (c) subjecting Ms. Bowser to harassing and retaliatory Absence Inquiry Letters.

82. Defendants have caused Ms. Bowser to suffer significant mental, emotional, and psychological distress.

83. Defendants' unlawful conduct was willful, wanton, intentional, and in total disregard of Ms. Bowser's rights, such that Defendants are liable for punitive damages in an amount to be determined at trial.

84. Consequently, Defendants have violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, and are liable to Ms. Bowser for damages and relief in accordance with the Prayer for Relief below.

## FOURTH CAUSE OF ACTION

*Violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq.*

85. Ms. Bowser repeats and re-alleges paragraphs 1-84 of this Complaint, as if fully set forth herein.

86. Defendants are required to pay Ms. Bowser's promised wages and benefits under the Fair Labor Standards Act of 1938, 29 U.S.C. § 206.

87. Defendants violated the Fair Labor Standards Act by *inter alia*: (a) failing to pay Ms. Bowser's promised wages and benefits under Defendants salary schedule, 29 U.S.C. § 215(a)(2); and (b) altering Ms. Bowser's time records with respect to her approved accommodation requests.

88. Defendants have caused Ms. Bowser to suffer significant emotional, mental and psychological distress.

89. Defendants' unlawful conduct was willful, wanton, intentional, and in total disregard of Ms. Bowser's rights, such that Defendants are liable for punitive damages in an amount to be determined at trial.

90. Consequently, Defendants have violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, and are liable to Ms. Bowser for damages and relief in accordance with the Prayer for Relief below.

## FIFTH CAUSE OF ACTION

### *Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, et seq.*

91. Ms. Bowser repeats and re-alleges paragraphs 1-90 of this Complaint, as if fully set forth herein.

92. Defendants subjected Ms. Bowser to disparate treatment, discrimination, retaliation, and a hostile work environment, based on her age and disabilities by, *inter alia*: (a) denying Ms. Bowser's job bid for a new position with an accommodation; (b) altering Ms. Bowser's time records with respect to her approved Sick or Annual Leave; (c) falsely charging Ms. Bowser as being AWOL; (d) subjecting Ms. Bowser to multiple retaliatory, harassing, and intimidating Absence Inquiry Letters with respect to her leave requests; (e) constantly harassing and retaliating against Ms. Bowser about her previously approved leave requests; and (f) subjecting Ms. Bowser to her direct supervisor's harassment and intimidation for following office procedures and protocols.

93. Defendants have caused Ms. Bowser to suffer significant emotional, mental and psychological distress.

94. Defendants' unlawful conduct was willful, wanton, intentional, and in total disregard of Ms. Bowser's rights, such that Defendants are liable for punitive damages in an amount to be determined at trial.

95. Consequently, Defendants have violated the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq.*, and are liable to Ms. Bowser for damages and relief in accordance with the Prayer for Relief below.

## SIXTH CAUSE OF ACTION

### *Declaratory Judgment*

96. Ms. Bowser repeats and re-alleges paragraphs 1-95 of this Complaint, as if fully set forth and incorporated herein.

97. Ms. Bowser invokes this Court's power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," pursuant to 28 U.S.C. § 2201.

98. Ms. Bowser is entitled to a declaration of her rights under her employment agreement with Defendants with respect to the statutes protecting against discrimination in the workplace.

99. An actual controversy exists between Ms. Bowser and Defendants related to their discrimination, retaliation, and creation of a hostile work environment.

100. Accordingly, Ms. Bowser is entitled to declaratory judgment under 28 U.S.C. § 2201.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Bowser prays for judgment to be entered in her favor and against Defendants, jointly and severally, in the amount of at least $25,000.00, on each and every cause of action contained in the Complaint, together with the following relief:

A. An award of compensatory damages, including damages for mental, psychological, and emotional distress, and significant financial losses;

B. An award of economic damages for past and future lost wages and benefits, including back pay and front pay, together with compensation for loss of earning capacity;

C. An award of nominal, consequential, or incidental damages;

D. An award of liquidated and statutory damages;

E. Entry of a declaratory judgment in favor of Ms. Bowser and against Defendants;

F. An award of pre- and post-judgment interest;

G. Equitable relief, including:

   i. Ordering Defendant to take appropriate corrective action to stop and prevent unlawful harassment and retaliation in the workplace;

   ii. Ordering Defendant to undergo anti-discrimination and anti-retaliation training;

   iii. Ordering Defendant to engage a research organization to assess the effectiveness of its anti-discrimination and anti-retaliation training; and

   iv. Ordering Defendant to pay the attorneys' fees and disbursements of Ms. Bowser's counsel to oversee and enforce the equitable remedies identified above;

H. An award of attorney's fees and the costs and disbursements of this action, including expert witness fees;

I. An award of punitive damages; and

J. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Ms. Bowser hereby requests a trial by jury of all issues in this action.

Dated:   July 21, 2023

- 16 -

Case 3:23-cv-00445-FDW-DCK   Document 1   Filed 07/21/23   Page 16 of 17

Respectfully submitted,

s/ Trevor M. Fuller
N.C. Bar No. 27044
Houston G. Armstrong
N.C. Bar No. 57567
THE FULLER LAW FIRM, P.C.
5970 Fairview Road, Suite 450
Charlotte, North Carolina 28210
Telephone: (704) 659-5600
Email: tmfuller@thefullerlawfirm.com
Email: harmstrong@thefullerlawfirm.com

*Attorneys for Plaintiff Willette L. Bowser*